**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION**

| | | |
|---|---|---|
| **MO-KAN IRON WORKERS** | ) | |
| **PENSION FUND**, *et al*, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. **18-CV-00482-GAF** |
| v. | ) | |
| | ) | |
| **FULSOM BROTHERS, INC.** | ) | |
| | ) | |
| Defendant. | ) | |

<u>**DEFENDANT'S MOTION TO SET ASIDE DEFAULT JUDGMENT WITH
SUGGESTIONS IN SUPPORT**</u>

**COMES NOW** defendant Fulsom Brothers, Inc., ("Defendant") by and through undersigned counsel, pursuant to Rules 55 and 60 of the Federal Rules of Civil Procedure and moves this Court for an order setting aside the Clerk's Entry of Default (Doc. 9), Default Judgment (Doc. 12) and the Judgment in Civil Action (Doc. 13). In support of this Motion, Defendant states as follows:

**I.    STATEMENT OF TIMELINE AND RELEVANT FACTS**

1.      This matter was filed on June 21, 2018. [See Complaint (Doc. 1)]

2.      Defendant was allegedly served on July 6, 2018. [Return of Service (Doc. 3)].

3.      On July 31, 2018, Plaintiffs filed their Motion for Default Judgment (Doc. 4) and their Motion for Entry of Default (Doc. 6).

4.      On August 28, 2018, this Court issued an Order to Show Cause (Doc. 10) as to why default judgment should not be entered. The Court set a deadline of September 5, 2018, for Defendant to show such cause.

5.      On August 24, 2018, then-counsel for Defendant, Chase Miller, faxed Plaintiffs' counsel, Bradley Jay Sollars, a letter explaining that Defendant would be willing to engage in good-faith settlement negotiations *if* the litigation was stayed. [Exhibit 1: Affidavit of Chase L. Miller]

6.      On August 27, 2018, Mr. Sollars called Mr. Miller.  During that conversation Mr. Miller reiterated that Defendant's willingness to enter into settlement negotiations was contingent upon the present litigation being stayed.  [Exhibit 1:  Affidavit of Chase L. Miller]

7.      From that point forward, Mr. Sollars and Mr. Miller began engaging in settlement negotiations, with Mr. Sollars providing additional information so Mr. Miller could formulate an offer. [Exhibit 1:  Affidavit of Chase L. Miller]

8.      Because Mr. Miller had made it clear on more than one occasion that Defendant's willingness to engage in settlement negotiations was contingent upon staying of the pending litigation, Mr. Chase understood that Mr. Sollars had accepted Mr. Miller's offer because he continued to engage in settlement negotiations. [Exhibit 1:  Affidavit of Chase L. Miller]

9.      Importantly, Mr. Miller had explicitly informed Mr. Sollars that if the litigation were not stayed, Defendant would have to obtain different counsel. [Exhibit 1:  Affidavit of Chase L. Miller]

10.     On August 28, 2018, Mr. Sollars sent Mr. Miller a letter stating when this suit was filed, when the summons was served, and that the Court had set a show cause deadline of September 5, 2018.  [Exhibit 2: August 28, 2018 letter from Bradley Sollars]

11.     On August 30, 2018, Mr. Miller emailed Mr. Sollars to provide an update on his progress in reviewing the information Mr. Sollars had provided.  In the communication, Mr. Chase again reiterated his understanding that Mr. Sollars had agreed to stay the pending

2

litigation and requested assurance that the litigation had been stayed. [Exhibit 1: Affidavit of Chase L. Miller]

12.     Defendant retained undersigned counsel on September 19, 2018. Since that time, undersigned counsel has been in communication with Plaintiff's counsel to discuss this matter, and another matter also pending in the Western District of Missouri, Case No. 18-CV-580-NKL.[1] Further, undersigned counsel has been gathering and analyzing information in order to be able to prepare this Motion.

## II.   SUGGESTIONS IN SUPPORT

Rule 55(c) permits this Court to "set aside an entry of default for good cause, and it may set aside a final default judgment under Rule 60(b)." Fed. R. Civ. P. 55(c).  Further, Rule 60(b) allows this Court to relieve a party from a final judgment for mistake, inadvertence, surprise, excusable neglect, fraud, misrepresentation, or misconduct by an opposing party. Fed R. Civ. P. 60(b)(1), (3).  A motion under Rule 60 need only be made in a "reasonable time." Fed. R. Civ. P. 60(c).

Generally, Courts look to three factors in deciding whether good cause or excusable neglect exist sufficient to set aside a default order or judgment: (1) whether the conduct of the defaulting party was blameworthy or culpable; (2) whether Defendant has a possibly meritorious defense; and (3) whether set-aside would prejudice the plaintiff.  *Grant v. City of Blytheville, Arkansas*, 841 F.3d 767, 772 (8th Cir. 2016); *see also J & J Sports Productions, Inc., v. Brewster "2" Café, LLC*, Case No. 11-CV-00690-SWW; 2013 WL 6150708 at *3 (E.D. Ark, November 22, 2013).  Here, Defendant's conduct was all taken in good faith and was justifiable.  Further,

---

[1] Undersigned counsel was working with Plaintiff's counsel to avoid entry of default judgment in that matter.

Defendant has multiple meritorious defenses and Plaintiff will suffer no prejudice as this matter has not been significantly delayed.

**1. Defendant's Default Was Not the Result of Culpable Conduct, but a Good Faith Belief the Matter Was Stayed During Settlement Negotiations.**

Here, good cause exists to set aside the judgment and, to the extent Defendant or Defendant's prior counsel was at fault for not filing an answer or other responsive pleading, such failure was due to mistake or excusable neglect. There is simply no evidence establishing that Defendant's failure to file an answer or show cause was intentional, willful, or in disregard for the rules of this Court. Further, there is nothing to suggest that it was the fault of Defendant, but rather a misunderstanding between Defendant's and Plaintiffs' counsel.

The Affidavit of Defendant's former attorney, Mr. Miller, establishes that he reasonably believed the parties were engaging in good faith settlement negotiations and that this litigation had been stayed. [Exhibit 1] Specifically, Defendant's prior counsel informed Plaintiff's counsel that he only had authority to negotiate if the matters were stayed. [Exhibit 1] Only then did Plaintiff's counsel provide requested documentation to allow Defendant to begin to prepare a settlement proposal. [Exhibits 1, 2]

These actions reasonably lead Defendant's prior attorney to conclude that Plaintiff's counsel had accepted Defendant's condition that the matters be stayed in order to begin negotiations. Other courts have recognized that a party's "reasonable belief that settlement negotiations would resolve a dispute without resort to a court is grounds to set aside a default." *J & J Sports Productions, Inc.,* Case No. 11-CV-00690-SWW; 2013 WL 6150708 at *3 (E.D. Ark, November 22, 2013) (citing *Whitman v. U.S. Lines, Inc.*, 88 F.R.D. 528 (E.D. Tx. 1980) (vacating entry of default where default was result of defendant's good faith belief that settlement negotiations were ongoing ….")).

4

To the extent Defendant's prior attorney misunderstood the status of the litigation from Plaintiffs' counsel, such misunderstanding constitutes a mistake, excusable neglect, or inadvertence for which relief from the Default Judgment is warranted.

### 2. Defendant Has Numerous Meritorious Defenses to Plaintiff's Claims.

Defendant has multiple meritorious defenses that would result in an outcome contrary to the result achieved by default judgment. "Whether a meritorious defense exists is determined by examining whether the proffered evidence would permit a finding for the defaulting party." *Stephenson v. E-Batrawi*, 524 F.3d 907, 914 (8th Cir. 2008) (internal citations and quotations omitted). In such a situation, "[t]he underlying concern is whether there is some possibility that the outcome after a full trial will be contrary to the result achieved by the default." *Id*. (internal citations, quotations, and ellipsis omitted).

Given the urgency with which the undersigned counsel has sought to file this Motion, the undersigned has undertaken a significant, yet limited, review of the presently-known information to address the meritorious defenses to be presented. The defenses presented in this Motion certainly do not entail the entirety of the defense that may ultimately be presented at trial, but they demonstrate that the defenses are likely to result in a finding contrary to the default judgment.

### a. The CBA under Which Plaintiffs Sue Requires All Disputes Be Resolved through Binding Arbitration, Depriving this Court of the Ability to Determine and Assess Damages.

According to the Complaint, Defendant's alleged liability results from a collective bargaining agreement between the Builders Association of Missouri and the International Association of Bridge, Structural and Ornamental Iron Workers, Local Union No. 10, AFL-CIO

5

(hereinafter the "CBA")[2]. However, the terms of the CBA—which Plaintiffs now seek to enforce in this Court—states that "[t]he Union, the Association, and all other parties to [the CBA] shall resolve all disputes arising under [the CBA] by use of this grievance and arbitration procedure." [Exhibit 3 at p. 15] The CBA further provides that any "arbitration decision shall be final and binding." [*Id.*]

Importantly, the appropriate procedure when an arbitration provision applies is "for the district court to stay or dismiss the case based on a Rule 12(b)(6) or Rule 56 motion pending arbitration." *Seldin v. Seldin*, 879 F.3d 269, 272 (8th Cir. 2018). Under the Federal Arbitration Act, an agreement to arbitrate a controversy is valid, enforceable and irrevocable. 9 U.S.C. § 2. If the opposing party refuses to arbitrate, the Court must grant the application to compel arbitration upon the moving party showing an agreement to arbitrate. 9 U.S.C. §§ 2-3.

Here, there is no doubt that the arbitration agreement exists or applies. The very claims that Plaintiffs assert stem from the alleged obligations under the CBA, which includes the requirement that "all disputes arising under [the CBA]" be resolved through binding arbitration. Despite knowing an arbitration provision existed, Plaintiffs breached the very agreement they now seek to enforce by failing to submit the matter to arbitration. Notably, by failing to submit the dispute to an arbitrator within time period outlined in the CBA, Plaintiffs are barred from recovery because the arbitration provision explicitly states that "time is of the essence." [Exhibit 3 at p. 15, ("If the dispute cannot be resolved … it shall be referred for a decision to one of three … arbitrators within seven (7) days"]

Here, because a written arbitration agreement exists and encompasses Plaintiff's claims, Defendant has a strong likelihood of succeeding on a Rule 12(b)(6) motion to either dismiss the

---

[2] A copy of the CBA is attached hereto as Exhibit 3.

case or to have it stayed pending arbitration.  Further, because Plaintiffs failed to timely submit the dispute to an arbitrator, they have arguably waived the claims made in this suit.

### b.  A Portion of Plaintiffs' Claims Are Barred by the Statute of Limitations.

Plaintiffs' Complaint alleges that the damage suffered is calculated based on work performed for the period of January 1, 2012 through December 31, 2013—a period beginning nearly six and a half years prior to the filing of this lawsuit[3].   [See Complaint (Doc. 1) at Count I ¶¶ 11, 14, 15, B, C, Count II ¶¶ 3, B, Count III at ¶¶ 3, B; See Affidavit In Support of Unpaid Fringe Benefit Contributions and Audit Costs (Doc. # 8) at ¶2].  While the Employee Retirement Income Security Act ("ERISA"), under which Plaintiffs sue, does not contain a specific statute of limitations for claims such as those asserted by Plaintiffs, Federal courts have routinely held that in a case involving an ERISA claim, the Court should apply the state statute of limitations that fits the best.  *Johnson v. State Mut. Life Assur. Co. of American*, 942 F.2d 1260, 1261–62 (8th Cir. 1991).  Here, all of Plaintiffs' claims arise from alleged ERISA violations, a federal statute that seeks to enforce a written agreement. [Complaint (Doc. 1) ¶¶ 1, 3)]  In Missouri, the statute of limitation for "an action upon liability created by a statute other than a penalty or forfeiture," and upon a written contract, is five years.  § 516.120 RSMo.   Additionally, claims asserting statutory penalties are subject to a three year limitation. § 516.130 RSMo.  As such, the claims for ERISA violations and breach of the CBA are at best, five years, and three years for any alleged penalties such as interest or liquidated damages.

Even though Plaintiffs conveniently combine calendar years 2012 and 2013 to allege and calculate their damages, at least a portion of those damages—anything preceding June 21, 2013—are not recoverable as they fall outside the five-year statute of limitations. As such, it

---

[3] This lawsuit was filed on June 21, 2018.

appears from the face of the Complaint, and the affidavits in support of the entry of default judgment, that Defendant has a strong legal argument that a portion of Plaintiffs' claims are barred by the statute of limitations, which would necessarily reduce any amounts awarded in the default judgment for unpaid contributions, and any correlating liquidated damages and interest.

Further, a significant portion of Plaintiff's damage claim is for liquidated damages and interest. Unlike Plaintiff's underlying claim, the claims for liquidated damages or interest under ERISA are subject to a three-year statute of limitations. § 516.130 RSMo[4]. As a result, all of Plaintiffs' claims for liquidated damages which occurred prior to 2015 are barred by the statute of limitations.

### c. Under the CBA and Subsequent Agreement, Plaintiffs Are Only Entitled to Fringe Benefits for Work Performed as an "Ironworker" and Not as a Laborer. However, Plaintiffs Claim Unpaid Benefits for Work as Both a "Laborer" and an "Ironworker."

Defendant's construction work is focused primarily on the constructing of highway signs and guardrails. [Exhibit 4: Affidavit of Jesse Cooper at ¶ 5] Importantly, many of the individuals who work for Defendant perform various tasks, some of which are covered by the CBA while others are not. [Exhibit 4 a ¶ 5] As a result, in 1979, the Ironworkers Local Union 10, and the Laborers Local Union 1290, agreed that various tasks would be considered "Ironworker" work and others "Laborer" work. [Exhibit 4 at ¶ 6] This agreement is outlined in Exhibit 4-A.

It is Defendant's belief[5] that despite this agreement, Plaintiffs' audit fails to take into consideration that some of the hours audited were hours worked as "laborers" not as

---

[4] Plaintiffs assert their right to liquidated damages and interest is contractual and not statutory. However, as explained in Subsection c, that purported contractual agreement should not be binding upon defendants and, if binding, should not be retroactive beyond 2015.

[5] Defendant is still investigating and analyzing the results of Plaintiff's audit, which will continue through the discovery process as Defendants learn upon what information the audit relied. However, in an effort to get this Motion on file as soon as possible, and avoid delay, Defendants assert this as a meritorious defense now because Defendant does believe the audit erroneously included hours not properly subject to the CBA.

"ironworkers." Therefore, these hours cannot properly form the basis of any damage calculation. This failure also affects any amount of liquidated damages or interest because such amounts are calculated as a percentage of the purportedly unpaid benefits. See 29 U.S.C. 1132(g)(2)(C)(ii). Additionally, the law only permits the award of interest *or* liquidated damages, whichever is greater, but not both. *Id*. Here, Plaintiff has obtained judgment from this Court awarding it both interest and liquidated damages—amounts which they are not entitled to under the law. [Judgment (Doc. 13)].

Further, to the extent Plaintiff wants to rely on the "Discussion and Resolution for Minutes Liquidated Damages and Interest Assessments" (Doc. 8–2) to support its ability to receive both liquidated damages and interest, that unsigned document was dated and allegedly became effective on August 1, 2015—more than two years after the audit period. Additionally, there is no evidence that Defendant ever assented to the terms contained within that unsigned document. It would be improper to retroactively apply a unilateral change to the CBA against Defendant. As a result, federal law would apply, which precludes the award of both liquidated damages *and* interest.

These factual and legal arguments demonstrate that Defendant, if permitted to defend this matter on the merits, would likely achieve a result contrary to the default judgment. Importantly, if an arbitrator finds that Plaintiffs did not timely submit its complaint, then Plaintiffs' claims could be disposed of in their entirety. Nevertheless, even if the claims are not completely disposed of, it is almost certain that the amount of damages will be significantly different given Plaintiffs' erroneous accounting methods (including laborer hours as ironworker hours), including hours outside of the statute of limitations period, miscalculating liquidated damages, and doubling its damages with interest and liquidated damage.

**3. No prejudice will result from the Court setting aside the default judgment.**

Plaintiffs will suffer no prejudice if the default judgment is set aside and Defendant is permitted to file its responsive pleading. "Setting aside a default must prejudice plaintiff in a [] concrete way, such as loss of evidence, increased difficulties in discovery, or greater opportunities for fraud and collusion." *Johnson v. Dayton Elec. Mfg. Co.*, 140 F.3d 781, 785 (8th Cir. 1998) (internal quotations and citations omitted).

Here, it has been approximately one month since the Court has entered default judgment. And, as indicated above, since even before that time the parties were engaging in settlement negotiations with Defendant's previous counsel under the belief that this matter was stayed. As a result, nothing will be lost by setting aside the default judgment. The parties can continue to engage in good-faith settlement negotiations and, if necessary, the parties can litigate the issues on the merits. And, because the delay has been *de minimus*, there will be no significant impact on a discovery timeline or on the availability of evidence. In fact, the evidence Plaintiff apparently relies upon is already in Plaintiff's possession—its own audit reports. Notably, "prejudice may not be found from delay alone or from the fact that the defaulting party will be permitted to defend on the merits." *Id*.

## III. CONCLUSION

Defendant's prior attorney reasonably believed this matter had been stayed while Plaintiff's counsel and he engaged in good-faith settlement negotiations. As a result, Defendant did not obtain additional counsel licensed in this jurisdiction to file an answer or other responsive pleading. Further, Defendants have multiple meritorious defenses that could reduce or eliminate its liability. Finally, no prejudice will inure to Plaintiffs simply by having to prosecute this matter on the merits.

WHEREFORE, Defendant Fulsom Brothers, Inc. respectfully requests that this Court set aside the Clerk's Entry of Default (Doc. 9), the Default Judgment (Doc. 12) and the Judgment in Civil Action (Doc. 13) and permit Defendant 14 days from the date of the order in which to file its answer or other responsive pleading.

Respectfully submitted,

**ENSZ & JESTER, P.C.**


/s/ Christopher M. Napolitano
WESLEY J. CARRILLO          MO #61199
CHRISTOPHER M. NAPOLITANO MO #66610
2121 City Center Square
1100 Main Street
Kansas City, MO  64105
Telephone:  816-474-8010
Facsimile:  816-471-7910
E-mails:     wcarrillo@enszjester.com
                  cnapolitano@enszjester.com

**ATTORNEYS FOR DEFENDANT**

## CERTIFICATE OF SERVICE

I hereby certify that, on October 5, 2018, the above and foregoing was electronically filed with the Clerk of the Court to be served by operation of the Court's electronic filing system upon all counsel of record.

BRADLEY J. SOLLARS      MO #54931
AARON D. SCHUSTER      MO #68672
ARNOLD, NEWBOLD, WINTER & JACKSON, PC
1100 Main Street, Suite 2001
Kansas City, Missouri 64105
Telephone:  816-421-5788
Facsimile:  816-471-5574
**ATTORNEYS FOR PLAINTIFFS**

/s/ Christopher M. Napolitano
**ATTORNEYS FOR DEFENDANTS**